IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANTONIO E. RIDDICK,

      Plaintiff,

v.                                    Civil Action No. 3:19CV472

OLIVER, et al.,

      Defendants.

## MEMORANDUM OPINION

Antonio E. Riddick, a Virginia inmate proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983 action.[1] Proceeding on the Particularized Complaint ("Complaint," ECF No. 17), the following two claims remain against Officer Oliver:[2]

| | | |
|---|---|---|
| Claim One | Officer Oliver violated Riddick's Eighth Amendment[3] right to be free from cruel and unusual punishment when she fired the gas gun. (Id. at 2.) |

---

[1] By Memorandum Opinion and Order entered on February 2, 2021, the Court dismissed Riddick's claims against Defendants Bradshaw, Holloway, and Hamilton. (ECF Nos. 32, 33.) Officer Oliver is now the only remaining defendant.

[2] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization and omits the emphasis in quotations from the parties' submissions.

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

Claim Two        Officer Oliver violated Riddick's Eighth and Fourteenth Amendment[4] rights by denying him an opportunity to "wash off the chemical agents" following the use of the gas gun.  (Id.)

The matter is now before the Court on Officer Oliver's MOTION FOR SUMMARY JUDGMENT.  (ECF No. 36.)  Riddick filed PLAINTIFF'S OPPOSITION TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ("Motion to Deny Summary Judgment," ECF No. 46), in which he moves the Court to deny Officer Oliver's Motion for Summary Judgment. The Motion to Deny Summary Judgment (ECF No. 46) will be denied as unnecessary.  Riddick also filed PLAINTIFF'S MEMORANDUM IN SUPPORT TO DENY DEFENDANT'S SUMMARY JUDGMENT (ECF No. 47), which the Court construes as his response brief.  For the reasons stated below, Officer Oliver's Motion for Summary Judgment will be denied.[5]

## I.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

[4] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.

[5] Riddick also filed PLAINTIFF'S MOTION FOR EXTENSION OF TIME ("Motion for Extension of Time," ECF No. 45), in which he requests additional time to respond to the Motion for Summary Judgment. Riddick subsequently informed the court that it could "disregard" his Motion for Extension of Time because the law librarian "c[a]me through" with the materials he had requested.  (ECF No. 46-1, at 1.)  Accordingly, the Motion for Extension of Time (ECF No. 45) will be denied.

56(a).  The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted).  When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  However, a mere "scintilla of evidence" will not preclude summary judgment.  Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . .

upon whom the onus of proof is imposed." Id. (quoting Munson, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of her Motion for Summary Judgment, Officer Oliver has submitted: (1) her own affidavit[6] ("Oliver Affidavit," ECF No. 39); and, (2) a one-page medical record from Sussex I State Prison ("SISP") pertaining to Riddick (ECF No. 37-2).

In opposition, Riddick has submitted: (1) an affidavit from fellow inmate Budder Khan ("Khan Affidavit," ECF No. 47-1); (2) his own affidavit ("Riddick Affidavit," ECF No. 47-2); as well as, (3) various other documents, including, inter alia, a Disciplinary Report, an Informal Complaint, a Regular Grievance, and other documents that the Court will refer to by their respective CM/ECF designations (ECF Nos. 47-3 through 47-6).

The facts offered by an affidavit or sworn declaration must be in the form of admissible evidence. See Fed. R. Civ. P. 56(c)(4). The sworn statement "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that

_____

[6] Officer Oliver submitted two versions of her affidavit, one signed (ECF No. 39), and one unsigned (ECF No. 37-1). The Court will consider only the signed version (ECF No. 39) in resolving the Motion for Summary Judgment.

the affiant or declarant is competent to testify on the matters stated." Id. Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted). The absence of an "affirmative showing of personal knowledge of specific facts" prevents the consideration of such facts in conducting a summary judgment analysis. EEOC v. Clay Printing Co., 955 F.2d 936, 945 n.9 (4th Cir. 1992) (citation omitted) (internal quotation marks omitted).

Officer Oliver has submitted a one-page medical record from SISP pertaining to Riddick. (See ECF No. 37-2.) However, she does not establish in her Affidavit that she was the custodian of said document, the manner in which it was kept, that she had first-hand knowledge of Riddick's medical care, or any other facts to establish a foundation for its admission. Thus, the Court will not consider this document at this time. See Campbell v. Verizon Va., Inc., 812 F. Supp. 2d 748, 750 (E.D. Va. 2011) ("For documents to be considered, they 'must be authenticated by and attached to an affidavit' that meets the strictures of Rule 56." (quoting Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993))).

As discussed below, the parties' accounts of what occurred diverge significantly. The Court first sets forth the undisputed facts and then summarizes the relevant facts that are in dispute. All permissible inferences are drawn in favor of Riddick.

## II.  SUMMARY OF RELEVANT FACTS

### A. Undisputed Facts

"SISP is a security level 5 facility, meaning that it is among the highest-security-level prisons within the Virginia Department of Corrections ["VDOC"]." (Oliver Aff. ¶ 1.)  On February 15, 2019, Officer Oliver "was the Gun Officer for the Delta 2 Housing Unit." (Id. ¶ 4.)  At some point during her shift, she "launched a single round of OC spray into the housing unit." (Id.)

Riddick was standing at his cell door when Officer Oliver fired the OC spray. (Riddick Aff. ¶ 4.)  "[T]he [cartridge] and the spray hit the wall and hit [him] in the face and back of [his] neck." (Id.)  The spray caused Riddick's eyes to burn. (Id.)  The cold water in Riddick's cell was not working. (Id. ¶ 8.)  A work order had been placed, but at that time, only the hot water was working. (Id.)  However, the "hot water made it wors[e]." (Id.)  This is where the parties' accounts diverge.

### B. Disputed Facts

While both parties generally agree that an incident occurred on February 15, 2019, and that Officer Oliver fired the gas gun, the events precipitating Officer Oliver's use of force and what occurred in the aftermath of her actions are very much in dispute.

Officer Oliver swears that:

> [She] observed several offenders gathered in one area of
> the pod, huddled in a tight circle as though [they] were
> surrounding a fight.  The offenders, who were finishing

> in-pod recreation, were unrestrained.  [She] gave an
> audible command for the offenders in the pod to disburse
> several times.  The offenders continued in the huddle,
> causing [her] to believe there might be an offender being
> assaulted.  [She] gave a second and third verbal command
> for all offenders to disburse.  When the offenders still
> did not comply, [she] launched a single round of OC spray
> into the housing unit.

(Oliver Aff. ¶ 4.)

Officer Oliver further swears that Riddick never told her he had been exposed to the OC spray or that he needed a shower.  (Id. ¶¶ 5, 6.)  Officer Oliver maintains that she would never deprive an inmate that had been exposed to OC spray of an opportunity to decontaminate with access to additional running water or medical care.  (Id. ¶ 6.)

Riddick and Khan swear that Officer Oliver argued with another inmate approximately 10-15 minutes before the OC spray was fired. (Riddick Aff. ¶ 3; Khan Aff. ¶ 7.)  Both men maintain that there was no fight between inmates.  (Riddick Aff. ¶ 3; Khan Aff. ¶ 7.) Khan swears that there was not even a gathering of inmates in the area.  (Khan Aff. ¶ 7.)  Both men swear that Officer Oliver did not issue any warnings before using the OC spray.  (Riddick Aff. ¶ 4; Khan Aff. ¶ 7.)  They also swear that Riddick told Officer Oliver that he had been sprayed, that his eyes were hurting and that he wished to go to the shower, to which, they swear, Officer Oliver replied, "hell no, get the fuck in your cell."  (Riddick Aff. ¶ 4; see Khan Aff. ¶ 5).

## III.  ANALYSIS

### A.  Claim One

In Claim One, Riddick alleges that Officer Oliver violated his Eighth Amendment right to be free from cruel and unusual punishment when she fired the gas gun. (ECF No. 17, at 2.) While his claim is somewhat awkwardly worded, at bottom, it is clear that Riddick alleges that Officer Oliver used excessive force against him. (See id.)

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that '"the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component).'" Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" Id. (citing Wilson v. Seiter, 501 U.S. 294, 298–300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" Williams, 77 F.3d at 761 (quoting Hudson v. McMillian, 503 U.S. 1, 5 (1992)).

When an inmate claims that prison officials used excessive force against his person, the objective component is less demanding relative to the subjective component.  See id.  With respect to the objective component, the inmate must demonstrate that the "nature" or amount of force employed "was nontrivial." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010); see id. at 38 (observing that "a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim" (quoting Hudson, 503 U.S. at 9)).  Regarding the subjective component, the inmate must demonstrate "'wantonness in the infliction of pain.'"  Iko, 535 F.3d at 239 (quoting Whitley v. Albers, 475 U.S. 312, 322 (1986)). "The 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 7).

The Supreme Court has identified a number of "factors to assist courts in assessing whether an officer has acted with wantonness."  Iko, 535 F.3d at 239 (internal quotation marks omitted).  These include:

> (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'

Id. (quoting Whitley, 475 U.S. at 321).  Additionally, although not dispositive, the extent of the injury suffered by the inmate is also relevant to the subjective inquiry.  Wilkins, 559 U.S. at 37-38.  The extent of the injury "may suggest whether the use of force could plausibly have been thought necessary in a particular situation" or "provide some indication of the amount of force applied."  Id. at 38 (internal quotation marks omitted).  "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur."  Whitley, 475 U.S. at 321 (emphasis added) (citing Duckworth v. Franzen, 780 F.2d 645, 652 (7th Cir. 1985)).

Officer Oliver does not argue, much less demonstrate, that she acted without intentionality, see Iko, 535 F.3d at 238, or that her use of OC spray in this instance was trivial, see Wilkins, 559 U.S. at 39.  Thus, the question becomes "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Wilkins, 559 U.S. at 37 (internal quotation marks and citation omitted).

Applying the four-factor test outlined above, see Iko, 535 F.3d at 239 (citation omitted), a factfinder could easily come to dramatically different conclusions, depending on which party's version of events is credited.

Riddick and Khan swear that there was no fight, and Khan says that there was not even a gathering of inmates. (Riddick Aff ¶ 3; Khan Aff. ¶ 7.) If true, there would be no "perceived threat" and no need for the application of force. Iko, 535 F.3d at 239 (citation omitted). Thus, the first and third factors would lean in Riddick's favor. Id. (citation omitted). Similarly, because there was no need for force, the "relationship between the need and the amount of force used" would be unbalanced. Id. (citation omitted). As such, the second factor would tilt in Riddick's favor. Id. (citation omitted). Finally, both men swear that Officer Oliver failed to give any warnings before firing the OC spray. (Riddick Aff ¶ 4; Khan Aff. ¶ 7.) If true, Officer Oliver did not make "any efforts . . . to temper the severity of [her] [use of] force[]." Iko, 535 F.3d at 239 (internal quotation marks and citation omitted). Thus, the fourth factor would also go to Riddick. Id. (citation omitted). From this, a factfinder could conclude that Officer Oliver acted "maliciously and sadistically to cause harm," rather than "in a good-faith effort to maintain or restore discipline." Wilkins, 559 U.S. at 37 (citation omitted).

Of course, when the Court applies the same four-factor test to Officer Oliver's version of events, it becomes clear that a factfinder could just as easily come to the opposite conclusion, that Officer Oliver was, in fact, acting in good-faith and attempting to restore discipline. See id.

In either case, genuine issues of material fact exist that preclude the grant of summary judgment. Accordingly, the Motion for Summary Judgment will be denied as to Claim One.

**B. Claim Two**

In Claim Two, Riddick alleges that Officer Oliver violated his Eighth and Fourteenth Amendment rights by denying him an opportunity to "wash off the chemical agents" following the use of the gas gun. (ECF No. 17, at 2.) Although Riddick references the Fourteenth Amendment's Due Process Clause in his Complaint, "it is now well established that the Eighth Amendment 'serves as the primary source of substantive protection to convicted prisoners,' and the Due Process Clause affords a prisoner no greater substantive protection 'than does the Cruel and Unusual Punishment Clause.'" Williams, 77 F.3d at 768 (quoting Whitney, 475 U.S. at 327). Thus, Riddick's substantive due process claim is subsumed within his Eighth Amendment claim.

For an Eighth Amendment claim pertaining to conditions of confinement to survive summary judgment, the inmate must submit evidence that shows "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (quoting Wilson, 501 U.S. at 298). Under the objective prong, the evidence must demonstrate that the

12

deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." Strickler v. Waters, 989 F.2d 1375, 1380 n.3 (quoting Hudson, 503 U.S. at 9).

The subjective prong requires the plaintiff to submit evidence that demonstrates a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Quinones, 145 F.3d at 168 (citing Farmer, 511 U.S. at 837); see Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive summary judgment, the deliberate indifference standard requires a plaintiff to show that "the official in question subjectively recognized a substantial risk of harm" and "that the official in

question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Rich, 129 F.3d at 340 n.2).

On this record, genuine issues of material fact exist as to what Officer Oliver knew about Riddick's condition, and whether her response was reasonable. As with Claim One, a factfinder could reach opposite conclusions as to Officer Oliver's liability depending on which party's version of events is credited.

Officer Oliver maintains that Riddick did not tell her that he had been exposed to OC spray or that he needed a shower. (Oliver Aff. ¶¶ 5, 6.)  If credited, a factfinder could determine that Officer Oliver is not liable because she was not subjectively aware of a substantial risk of harm to Riddick.  See Parrish, 372 F.3d at 303 (citation omitted).

Conversely, Riddick and Khan both swear that Riddick immediately told Officer Oliver that he had been exposed to OC spray, that his eyes were hurting, and that he needed a shower. (Riddick Aff. ¶ 4; Khan Aff. ¶ 5.)  Both men swear that Officer Oliver responded to Riddick's statement by saying, "hell no, get the fuck in your cell."  (Riddick Aff. ¶ 4; see Khan Aff. ¶ 5.) Riddick indicates that he continued to experience burning in his eyes for several days after the incident.  (Riddick Aff. ¶ 7.)

If credited, this testimony could lead a factfinder to conclude that Officer Oliver was deliberately indifferent to Riddick's serious medical need for decontamination because she had subjective knowledge of a substantial risk of harm to Riddick, and knew her "actions were inappropriate in light of that risk." See Parrish, 372 F.3d at 303 (internal quotation marks and citation omitted). This is especially true when Riddick and Khan's testimony is viewed in conjunction with Officer Oliver's sworn statement that she would never deprive an inmate that had been exposed to OC spray of an opportunity to decontaminate, (see Oliver Aff. ¶ 6), which arguably shows that Officer Oliver was aware of the significant risk that OC spray poses to an individual that is exposed and the need for prompt decontamination.[7]

In either event, genuine issues of material fact exist that preclude the grant of summary judgment. Accordingly, the Motion for Summary Judgment will be denied as to Claim Two.

---

[7] OC spray "is designed to cause intense pain, a burning sensation that causes mucus to come out of the nose, and involuntary closing of the eyes, a gagging reflex, and a temporary paralysis of the larynx." Douty v. Rubenstein, No. 2:13-32832, 2016 WL 11481145, at *19 (S.D. W.Va. April 27, 2016) (footnote and citation omitted). "[S]ome effects [of OC Spray] may include coughing, choking, gagging, difficulty breathing, [and] vomiting." Id. at *19 n.7 (citation omitted). The decontamination process should begin "as soon as possible after restraining [the] inmate or subject." Id. at *19 (citation omitted).

## C.  Qualified Immunity

Finally, Officer Oliver asserts that she is entitled to qualified immunity.  (ECF No. 37, at 9-11.)  "A defendant invoking qualified immunity must do more than mention its existence and demand dismissal of the suit."  Fisher v. Neale, No. 3:10CV486-HEH, 2010 WL 3603495, at *3 (E.D. Va. Sept. 8, 2010).  The Defendant must (1) identify the specific right allegedly violated "at the proper level of particularity," Campbell v. Galloway, 483 F.3d 258, 271 (4th Cir. 2007); (2) brief, with full supporting authority, why the right was not so clearly established as to put a reasonable official on notice of any legal obligations; and (3) describe with particularity the factual basis supporting the assertion that a reasonable official in the defendant's situation would have believed her conduct was lawful.  See Collison v. Gott, 895 F.2d 994, 998 (4th Cir. 1990).  As Officer Oliver has failed to satisfy this obligation with respect to her assertion of qualified immunity, her Motion for Summary Judgment on this defense will be denied.

## IV.  CONCLUSION

For the foregoing reasons, Officer Oliver's Motion for Summary Judgment (ECF No. 36) will be denied.  Riddick's Motion for Extension of Time (ECF No. 45) and his Motion to Deny Summary Judgment (ECF No. 46) will be denied.

The matter will be set for trial and, to that end, the Court will appoint counsel to represent Riddick. Thereafter, counsel shall contact the Court to schedule a conference call to occur by March 11, 2022 for the purpose of setting a trial date.

The style of the case must reflect the defendant Oliver's first name. Counsel for the defendant shall file a Notice providing that information and an Order will issue changing the style of the case.

The matter will be referred to United States Magistrate Judge Mark R. Colombell for a settlement conference. Counsel for Officer Oliver shall contact the Chambers of Magistrate Judge Colombell forthwith to set a date for the conference. The settlement conference should be scheduled well in advance of the trial date.

The Clerk is directed to send a copy of this Memorandum Opinion to Riddick, to counsel of record, and to Magistrate Judge Mark R. Colombell.

                                    /s/    R E P
                              Robert E. Payne
                              Senior United States District Judge


Richmond, Virginia
Date: March  4 , 2022